IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL V. LO SASSO, | : | CIVIL ACTION NO. **1:CV-08-1043** |
| Plaintiff | : | (Judge Caldwell) |
| v. | : | (Magistrate Judge Blewitt) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | : | |
| Defendant | : | |

## **REPORT AND RECOMMENDATION**

This is a Social Security disability case pursuant to 42 U.S.C. § 405(g), wherein the Plaintiff, Daniel V. Lo Sasso, is seeking review of the decision of the Commissioner of Social Security, ("Commissioner"), that denied his claim for Disability Insurance Benefits, ("DIB"), pursuant to Title II of the Social Security Act, ("Act"), and Supplemental Security Income, ("SSI"), pursuant to Title XVI of the Act.  42 U.S.C. §§ 401-433; 42 U.S.C. §§ 1381-1383f.

**I.     PROCEDURAL HISTORY.**

The Plaintiff protectively filed an application for DIB and SSI on February 19, 2003, alleging disability since January 22, 2003, due to a back and hip pain, mental impairments and carpal tunnel. (R. 14, ).  The Plaintiff acquired enough quarters of coverage to remain insured through December 31, 2009. (R. 17).  The state agency denied his claim initially. (R. 14).  The case was dismissed due to abandonment, but was re-opened for good cause as the Plaintiff did not receive the notices relating to his case due to the fact that he was incarcerated. (R. 14). Since good cause was established for the late filing, the Plaintiff's untimely request for a hearing was granted. (R. 14).  A hearing was held before an Administrative Law Judge, ("ALJ"), on September 20, 2007, at SCI-Fayette.[1]  (R. 234-305).  The Plaintiff was represented by a non-lawyer representative, Ms. Kathleen Mink, a paralegal and the Plaintiff's former wife. (R. 14,

---

[1]     At least two previously scheduled hearings were canceled and rescheduled due to difficulties conducting the hearing because of the Plaintiff's incarceration. (R. 14).  This accounts for the inordinate delay in the Plaintiff's case. (R. 14).

234-305). At the hearing, the Plaintiff and a vocational expert, ("VE"), testified. (R. 234-305). The Plaintiff was denied benefits pursuant to the ALJ's decision of November 16, 2007. (R. 14-25).

The Plaintiff requested review of the ALJ's decision. (R.10). The Appeals Council denied his request on March 25, 2008, thereby making the ALJ's decision the final decision of the Commissioner. (R. 6-9). 42 U.S.C. § 405(g).

In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions. (Docs. 10 & 16). The Plaintiff filed a reply brief on December 9, 2008. (Doc. 22).

## II.     STANDARD OF REVIEW.

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999). It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists

2

>	in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III.	DISABILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits.  *See* 20 C.F.R. § 404.1520.  *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).  If the Commissioner finds that a plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further.  *See* 20 C.F.R. § 404.1520.

The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. § 404.1520.

In the present matter, the ALJ proceeded through each step of the sequential evaluation process and concluded at step four that the Plaintiff was not disabled within the meaning of the Act.  (R. 14-25).  At step one, the ALJ found that the Plaintiff engaged in substantial gainful activity for fourteen months from late 2003 through December 2004, but has not engaged in substantial gainful activity from January 1, 2005.  (R. 17).  At step two, the ALJ concluded that the Plaintiff's degenerative disease in the low back and right hip, bipolar disorder with anxiety, history of personality disorder and DA&A and a pre-onset date history of gout, bilateral retinal surgery, left rotator cuff repair, right elbow tendonitis, Osgood/Slater's disease in the left knee, and carpal tunnel syndrome were a "severe" combination of impairments within the meaning of the Regulations.  (R. 17).  However, the ALJ found that individually these impairments were "non-severe"

impairments.  (R. 17-19).  At step three, the ALJ found that the Plaintiff does not have an impairment, or combination of impairments, severe enough to meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.  (R. 19).

At step four, the ALJ found that the Plaintiff is capable of performing his past relevant unskilled work as a janitor.  (R. 24).   Thus, the ALJ determined that the Plaintiff has not been under a disability, as defined in the Act, from January 22, 2003, his alleged disability onset date, through the date of the ALJ's decision.[2]  (R. 25).

## IV.  BACKGROUND.

The Plaintiff was born on June 11, 1945, and was fifty-seven (57) years old on the alleged disability onset date and was sixty-two (62) years old at the time of the ALJ's decision.  (R. 241).  Therefore, he is considered a "person of advanced age" under the Regulations.  20 C.F.R. §§ 404.1563(e), 416.963(e).

The Plaintiff earned a high school diploma and completed some college, but did not earn a degree.  (R. 243-44).  He has past relevant work experience as a mechanic while in the Army. (R. 244-45).

The Plaintiff is able to take care of his personal grooming without assistance, but does so with pain from his hip.  (R. 280-81).  He is able to walk about an eighth of a mile on level ground and can stand for about 15 minutes.  (R. 268).  He testified that he cannot bend forward at the waist without pain in his back and neck and cannot get up from a squat.  (R. 268).  The Plaintiff is left-handed and cannot make a fist with his left hand due to having "trigger finger" in one of his fingers.  (R. 269).  He is able to hold a fork and spoon and zip his jumpsuit.  (R. 269).  The Plaintiff testified that he can lift up to 20 pounds and must change positions when sitting.  (R. 269-70).  The Plaintiff can

---

[2]  Although the Plaintiff claims he has been disabled since January 22, 2003, the relevant time period in this case is January 1, 2005, through October 24, 2005, the date on which the Plaintiff was incarcerated.  This is because the Plaintiff performed substantial gainful activity from late 2003 through December 2004, and because the Plaintiff is not eligible for social security disability benefits while incarcerated.

watch and understand a television program, but does not watch movies. (R. 270). The Plaintiff experiences double vision in his right eye due to a detached retina. (R. 273).

The Plaintiff suffers from right hip pain that requires him to use a cane to aid in walking. (R. 267). His hip pain prohibits him from walking up or down stairs and causes pain upon walking. (R. 267). The pain is constant and sharp, and runs down from the Plaintiff's hip to his knee causing weakness. (R. 267). The Plaintiff also experiences pain in his back. (R. 267). Due to the Plaintiff's mental impairments, he has difficulty getting along with others and maintaining employment. (R. 285-86).

Vocational expert, James Ganoe, testified based on the *Dictionary of Occupational Titles*. (R. 289-96). In response to the ALJ's hypotheticals, the VE stated that the Plaintiff would be able to perform his past relevant work as a janitor. (R. 292-93).

## V.    DISCUSSION.

The Plaintiff appears to argue that the ALJ erred in the credibility determination, the RFC determination, and in finding that the Plaintiff can perform his past relevant work as a janitor. (Doc. 10).

Residual functional capacity refers to what a plaintiff can do despite his limitations. 20 C.F.R. § 404.1545(a). In determining the plaintiff's residual functional capacity, the ALJ must consider all relevant evidence, including the medical evidence of record and the plaintiff's subjective complaints. 20 C.F.R. § 404.1545(a). The final responsibility for determining a plaintiff's residual functional capacity is reserved for the Commissioner, who will not give any special significance to the source of another opinion on this issue. 20 C.F.R. §§ 404.1527(e)(2), (3). At the hearing level, the responsibility for determining a plaintiff's residual functional capacity is reserved for the ALJ. 20 C.F.R. § 404.1546. Here, the ALJ determined that the Plaintiff is capable of performing medium work with occasional contact with supervisors, coworkers and the general public. (TR. 20).

In determining the Plaintiff's RFC, the ALJ considered and gave proper weight to all medical opinions of record. An ALJ must accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer*, 186 F.3d at 429 (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)); *see also Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir. 1994); *Jones v. Sullivan*, 954 F.2d 125, 128 (3d Cir. 1991); *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d Cir.1989); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988); *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986). Where the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Plummer*, 186 F.3d at 429 (citing *Mason*, 994 F.2d at 1066). The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. *See Adorno*, 40 F.3d at 48. In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. *Plummer*, 186 F.3d at 429; *Frankenfield*, 861 F.2d at 408; *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir. 1983).

The ALJ is required to evaluate every medical opinion received. 20 C.F.R. § 404.1527(d). Although he must consider all medical opinions, the better an explanation a source provides for an opinion, particularly through medical signs and laboratory findings, the more weight the ALJ will give that opinion. 20 C.F.R. § 404.1527(d)(3). While treating physicians' opinions may be given more weight, there must be relevant evidence to support the opinion. 20 C.F.R. § 404.1527(d). Automatic adoption of the opinion of the treating physician is not required. *See Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

"The only reasons for an ALJ to reject a treating physician's opinion are 'on the basis of contradictory medical evidence,' or if the opinion is unsupported by medical

6

data." *Kurilla v. Barnhart,* 2005 WL 2704887, at *5 (E.D. Pa. Oct. 18, 2005) (quoting *Plummer,* 186 F.3d at 429 and citing *Newhouse v. Heckler,* 753 F.2d 283 (3d Cir. 1985). Here, the ALJ discussed the medical opinions of record and noted that no treating provider has found the Plaintiff disabled. (R. 17-24).

The ALJ gave substantial weight to the psychological assessments of record. (R. 186-203). The ALJ noted that the Plaintiff treated with Mr. Gregory, MS, a psychologist at Tri-County for his mental impairments. (R. 18, R. 213). On February 13, 2003, Mr. Gregory conducted a psychological evaluation of the Plaintiff. (R. 213-16). The Plaintiff's IQ scores reflect a verbal IQ of 125; Performance IQ of 101 and Full Scale IQ of 118. (R. 18, 215). Mr. Gregory noted that the Plaintiff reported moderate depression on a rating scale for depression. (R. 215). It was noted that the Plaintiff has problems with impulse control, anger, and relationships, which "suggests characterological deficits." (R. 216). Mr. Gregory diagnosed the Plaintiff with bipolar disorder, most recent episode depressed, alcohol dependence and "R/O personality disorder." (R. 216).

The Plaintiff treated with Dr. Yoo, who conducted a psychiatric evaluation on April 30, 2003. (R. 18, 182). Dr. Yoo noted that this was the first psychiatric treatment the Plaintiff had ever received. (R. 182). The Plaintiff discussed his history of theft and spousal abuse, as well as mood swings with Dr. Yoo. (R. 182). Dr. Yoo reported that "[d]espite his Bipolar Disorder and his compulsive stealing behaviors, he was able to maintain a job until recently." (R. 182). Although the Plaintiff was "tangential in his speech" and unable to focus on one subject, Dr. Yoo found the Plaintiff to be a "reliable informant regarding his past." (R. 182). Dr. Yoo reported that the Plaintiff was casually groomed with acceptable personal hygiene and was sensible and coherent, without any reflection of paranoia. (R. 184).

Dr. Yoo found that the Plaintiff's "moral value is much lower than the average person and he is unable to see any wrongdoing in his behavior." (R. 184). The Plaintiff did not exhibit bizarre mannerism and his intelligence was in the normal range. (R. 184).

Dr. Yoo reported that the Plaintiff's judgment capacity was impaired, but that his impulse control had improved since he had been on Lithium. (R. 184). The Plaintiff was diagnosed with bipolar disorder, mixed, in a hypomanic state and borderline personality disorder. (R. 184). Dr. Yoo noted a GAF score of 60.[3] (R. 184). In closing, Dr. Yoo noted that the Plaintiff "might be suffering from Bipolar Disorder, most likely biologically determined. . .[s]ince he started Lithium treatment along with Seroquel, he has improved considerably. . .[h]is Lithium level at the present time is 1.14, in an adequate level." (R. 184). Dr. Yoo advised that the Plaintiff continue with taking Lithium, Seroquel and Xanax and should continue with scheduled counseling sessions. (R. 185).

Regarding the Plaintiff's other conditions, the ALJ noted that there is no objective medical evidence, other than the Plaintiff's self-reported medical history, of vision problems, shoulder/rotator cuff problems, gout, right elbow tendonitis, Osgood/Slater's disease in the left knee and carpal tunnel syndrome. (R. 19). The ALJ noted that the Plaintiff's degenerative disease of his low back and hip "have not been followed up medically" since before the Plaintiff was incarcerated in 2005. (R. 19). On October 12, 2005, Dr. Caucci noted that the Plaintiff suffered from severe osteoarthritis of the right hip, evidenced in x-rays, that caused tenderness and radiating pain. (R. 210). Dr. Caucci recommended right total hip replacement and noted that the Plaintiff stated that he would think about it and get back to him. (R. 211). On May 12, 2005, Dr. Larar reported the Plaintiff as having multilevel degenerative disc and facet disease with canal and foraminal stenosis, slightly greater at L3/4 and L4/5 right neural foramen. (R. 212). As mentioned earlier, the ALJ found all of these impairments individually "non-severe". (R. 17-19). A review of the medical records supports the ALJ's conclusion regarding

---

[3] The GAF scale was devised by the American Psychiatric Association and it ranges from 0 to 100. It is used by a clinician to indicate an overall judgment of a person's psychological, social, and occupational functioning. *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-R)* 34 (4th ed. 2000). A GAF score between 51 and 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." DSM-IV-R at 34.

these conditions. Substantial evidence supports the ALJ's consideration of the medical opinions of record.

The Plaintiff appears to argue that the ALJ erred in determining his RFC by failing to find his subjective complaints of mental and physical symptoms fully credible. (Doc. 10). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.' *Walters v. Commissioner of Social Sec.*, 127 F.3d 525, 531 (6th Cir.1997); *see also Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir.1991) ('We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.')." *Frazier v. Apfel*, 2000 WL 288246 (E.D.Pa. March 7, 2000). "The ALJ must indicate in his decision which evidence he has rejected and which [she] is relying on as the basis for his finding." *Schaudeck v. Com. of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999). An ALJ may find testimony to be not credible, but she must "give great weight to a claimant's subjective testimony of the inability to perform even light or sedentary work when this testimony is supported by competent medical evidence." *Id*.

In determining the Plaintiff's residual functional capacity, the ALJ considered all of the Plaintiff's symptoms and the extent to which these symptoms could be accepted as consistent with the objective medical evidence and other evidence. (R. 21-24). In considering a Plaintiff's symptoms, the ALJ must follow a two step process. 20 C.F.R. 404.1529(a). First, the ALJ must determine whether there is an underlying medically determinable impairment that reasonably could be expected to produce the Plaintiff's pain. 20 C.F.R. 404.1529(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the Plaintiff's pain and other symptoms to determine the extent to which they limit the Plaintiff's ability to work. 20 C.F.R. 404.1529(c).

In making this determination, the ALJ looks to the objective medical evidence to evaluate whether it supports the Plaintiff's subjective reports of pain. 20 C.F.R. 404.1529(c)(2). If a Plaintiff's subjective reports of pain suggest a greater severity than is

supported by objective medical evidence, the ALJ must consider other relevant factors such as:  activities of daily living; the location, duration, frequency and intensity of the Plaintiff's pain; factors that aggravate the pain; the type of medication, including side effects and dosage, used to treat the pain; any measures other than treatment that are used to alleviate pain; and other factors concerning the Plaintiff's limitations and restrictions due to pain.  20 C.F.R. 404.1529(c)(3).

      The ALJ found that the Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible "and considered only fair at best." (R. 23).  In making this determination, the ALJ considered all of the factors mentioned above.  The ALJ found that there is no indication in the record that any treating source found the Plaintiff disabled.  (R. 24).  The ALJ noted that the Plaintiff's "credibility is not enhanced, as noted in the record, being fired due to theft and not from a medical condition."

      The ALJ also found that "[a]lthough he alleged disability primarily due to mental health, he had very good reports of control and improvement with medication as discussed above with a GAF of 60. . .[a]dditionally, despite the reports of being unable to effectively ambulate and having problems due to arthritis, he was generally able to get by using over-the-counter medication for pain relief." (R. 23).   The ALJ discussed the statement submitted by the Plaintiff's ex-wife, Ms. Mink, regarding the Plaintiff's claim and found that her report "appears overstated when contrasted with the medical evidence and is not convincing of disability." (R. 23).  The ALJ found that the Plaintiff was moderately limited in concentration, persistence or pace and has moderate social limitations.  (R. 23, 24).

      The ALJ found that the Plaintiff's allegations concerning his symptoms were inconsistent with his activities of daily living and functional abilities.  (R. 22-24). Specifically, the ALJ pointed to the fact that the Plaintiff was able to perform light semi-skilled to unskilled work during after the alleged disability onset date.  (R. 24).   The ALJ

found that despite the Plaintiff's claim that he has vision problems, he testified that his hobby in prison was watching television. (R. 22). In addition, the ALJ noted that the Plaintiff testified that he sleeps about seven hours, can take care of his personal hygiene, sits in his cell, and occasionally sweeps the floor. (R. 22).

Based on the above, the ALJ determined that the Plaintiff is capable of performing past relevant unskilled work as a janitor and found that this work would not require the performance of work-related activities precluded by the Plaintiff's RFC. (R. 24). Substantial evidence supports the ALJ's RFC determination and the determination that the Plaintiff is capable of performing past relevant work. Accordingly, we will recommend that the Plaintiff's appeal be denied.

## VI. RECOMMENDATION.

Based upon the foregoing, it is respectfully recommended that Plaintiff's appeal be **DENIED.**

s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: March 19, 2009**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL V. LO SASSO, | : | CIVIL ACTION NO. **1:CV-08-1043** |
| Plaintiff | : | (Judge Caldwell) |
| v. | : | (Magistrate Judge Blewitt) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | : | |
| Defendant | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **March 19, 2009.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                                **s/ Thomas M. Blewitt**
                                                **THOMAS M. BLEWITT**
                                                **United States Magistrate Judge**

**Dated: March 19, 2009**